STATE of Missouri, Respondent,

v.

Jeffrey A. MARTIN, Appellant.

No. WD 65989.

Missouri Court of Appeals, Western District.

Jan. 23, 2007.

Nancy A. McKerrow, Columbia, for Appellant.

Shaun J. Mackelprang, Jefferson City, for Respondent.

Before LOWENSTEIN, P.J., SPINDEN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

After a jury trial for stealing pursuant to Section 570.030,[1] appellant Jeffrey Martin was sentenced to a fifteen-year term of imprisonment as a prior and persistent offender. On appeal, Martin raises two points of error contesting sufficiency of evidence and a single point challenging the admission of rebuttal evidence. Martin's claimed errors are without merit. Affirmed. Rule 84.16(b).

## I. Facts

On February 5, 2003, Jet Loyd left his maroon Chevrolet Blazer with the engine running in the parking lot at the Lakeside Village Apartments in Platte County. He ran back into his home to retrieve his forgotten lunch. Upon returning to the parking lots minutes later, the Blazer was gone. Loyd immediately reported the theft to the police.

Two days later, Kansas City Police Officer Mitchell Atwood's attention was drawn to a snow covered Blazer in the Westport Sunfresh parking lot. The officer suspected the car was abandoned, and after calling in the plates, learned that the car was stolen. The officer opened the unlocked door of the Blazer and, in processing the vehicle, lifted a fingerprint off the rearview mirror. When the Blazer was returned to its owner, Loyd reported the theft of a gun, knife, and a rosary from the vehicle.

On February 11, 2003, police found Martin hiding in the attic of a home in the northeast section of Kansas City. Martin was arrested on another offense and brought in for questioning. During an interview with Detective Teddy Taylor, Martin confessed to stealing Loyd's Blazer.

In his statement, Martin claimed that he was "on the run" having driven from Kansas City to Des Moines, before turning around and immediately returning to Kansas City around 6:30 am on the morning of February 5, 2003. He stated that he jumped into the running vehicle and drove off in the "stolen Blazer." He drove the vehicle to Hy–Vee to buy hygiene products. He then drove to the house of Kerensa Conaway, a woman he had met two years earlier. He was only at the Conaway home about ten minutes before he drove to Westport and parked the Blazer in the Sunfresh parking lot. He "ransacked" the vehicle, finding a Glock .40 caliber pistol under the seat. He took the gun, along with a knife and a rosary he found in the car and walked back to the northeast area of town.

## II. PROCEDURAL POSTURE

Martin was charged with stealing the Blazer pursuant to Section 570.030. At trial, Martin's redacted statement was introduced into evidence over defense objections. The defense's only witness was Officer Atwood. The State then called Ms. Conaway as a rebuttal witness. The defense objected to Conaway's testimony as outside the scope of rebuttal. The State claimed that Conaway's testimony would rebut the negative inference that the State could not connect Martin to the vehicle injected into the case by Atwood's testimony. The court overruled the defense objection and Conaway testified that Martin had come to her home in a "cherry red SUV ... maybe an Explorer." She also testified that Martin had a titanium gray handgun.

The jury returned a verdict of guilty. Martin was sentenced as a prior and persistent offender to fifteen years in prison.

---

1. All statutory references are to RSMo (2000).

## III. DISCUSSION

Martin raises three points on appeal. In his first two points, Martin claims the court erred in denying his motion for acquittal and accepting the verdict of the jury in that the evidence was insufficient to support the verdict. Martin claims in his final point that the trial court erred in admitting Conaway's rebuttal testimony.

### A. SUFFICIENCY OF EVIDENCE—INTENT TO DEPRIVE PERMANENTLY

In reviewing a challenge to the sufficiency of evidence, this court's role is to "determine whether enough evidence was produced at trial that a reasonable person could conclude that the accused was guilty." *State v. Vineyard,* 839 S.W.2d 686, 690 (Mo.App.1992). This court will not weigh the evidence. *Id.* Evidence that supports the verdict is accepted as true, and the State is accorded all favorable inferences therefrom. *State v. Livingston,* 801 S.W.2d 344, 345 (Mo. banc 1990). Adverse evidence and inferences are disregarded. *Id.*

■ In his first point on appeal, Martin contends that the evidence was insufficient for the jury to conclude that Martin intended to deprive Jet Loyd of the Blazer permanently. Martin had the car a short while before abandoning the vehicle. He argues that the only reasonable inference the jury could draw from the evidence was that Martin only intended a temporary deprivation.

To return a verdict for stealing under Section 570.030, the jury must find beyond a reasonable doubt that the defendant "appropriate[d] the property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." In this case, the jury was provided with verdict director, Instruction No. 7, that required a finding that Martin "retained

possession of a maroon Chevrolet Blazer ... for the purpose of withholding it from the owner permanently."

Intent can be inferred from circumstantial evidence as "[d]irect proof of the required mental state is seldom available." *State v. Brown,* 660 S.W.2d 694, 698 (Mo. banc 1983). The evidence need not exclude every hypothesis of innocence nor be conclusive of guilt. *Id.*

In this case, Martin's behavior demonstrates his intention to deprive Loyd of his property permanently. He took the Blazer without Loyd's permission. He "ransacked" the vehicle, taking a gun, knife, and rosary from the Blazer. He then abandoned the vehicle in another county, leaving the Blazer unlocked in a parking lot characterized by frequent auto thefts. Martin did not attempt to return the vehicle to Loyd or even bother to preserve Loyd's property by locking the Blazer's doors when he abandoned the vehicle.

Additionally, Martin's own statements are consistent with his intent to deprive Loyd of his vehicle permanently. In his statement, Martin states that he "jumped into that Blazer that was running" and that he "took that stolen Blazer and dropped it off in Westport in the grocery store parking lot." He also stated that "ransacked" the vehicle and "took the gun, the knife, a rosary." Both Martin's actions and statements provide sufficient circumstantial evidence from which the jury could conclude that Martin intended a permanent deprivation.

■ Martin points to the short amount of time he used the car before abandoning it as evidence of his lack of intent to deprive Loyd of the Blazer permanently. Martin seems to point to a temporal divide between an intent to temporarily deprive an owner of his property and an intent to deprive permanently. However, this court

has routinely rejected such an argument. Control of property in a manner adverse to the property rights of the owner, even for an instant, is sufficient to demonstrate an intent to deprive the owner of his property permanently. *State v. Hargrave*, 915 S.W.2d 387, 389–90 (Mo.App.1996). Even where a defendant abandons the stolen property shortly after taking control, Missouri courts have upheld the sufficiency of the evidence of an intent to deprive permanently. *See State v. Sturgell*, 530 S.W.2d 737 (Mo.App.1975); *State v. Winkelmann*, 761 S.W.2d 702 (Mo.App.1988).

A reasonable juror could infer from Martin's actions and statements that he intended to deprive Loyd of his vehicle permanently. The trial court did not err in overruling Martin's motion for judgment of acquittal and in accepting the jury's verdict of guilty of stealing.

### B. SUFFICIENCY OF EVIDENCE— UNLAWFULLY RETAIN

In his second point on appeal, Martin alleges an insufficiency of evidence from which to conclude that Martin "retained" the Blazer. Martin argues that the term "retain" pertains to embezzlement or fraudulent recovery only. Martin argues that when an act constituting a crime is specified in the charge, the State must prove the act.

The Missouri Approved Instruction verdict director for stealing, MAI–CR 3d 324.02.1, offers a number of different terms synonymous with stealing from which the State can choose. These terms include "took," "obtained," "used," "retained," "concealed," or "transferred." MAI–CR 3d 324.02.1. Martin states that "[t]he State could have instructed the jury that Appellant 'took' or 'obtained' or 'used' Loyd's Blazer and the *evidence would have been sufficient.*" (Emphasis added.) Thus, Martin does not challenge the suffi-

ciency of the evidence to support the charge, but, rather, he challenges the State's choice of the term "retained" in the jury instruction.

Despite Martin's characterization of trial error as an insufficiency of evidence, the real error to which Martin points is indeed instructional error. The sole error raised is the choice of the wrong term in the jury instruction.

Instructional error must be raised before the trial judge to be properly preserved for appeal. "In order to preserve claims of instructional error for review, counsel is required to make specific objections to the instruction at trial and again raise the error in the motion for new trial." *Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 140 (Mo.App.1999) (*citing* Mo. R. Civ. P. 70.03).

Martin did not object to the wording of the verdict director and did not bring the error of which he now complains to the trial court's attention. Nor did Martin raise the instructional error in his motion for a new trial. Therefore, Martin's second point is not preserved for appellate review and is denied.

### C. SCOPE OF REBUTTAL TESTIMONY

Martin challenges the admission of Kerensa Conaways's testimony as the State's rebuttal witness. Martin claims that Conaway's testimony was direct evidence of Martin's guilt and should not have been admitted as rebuttal. Moreover, her testimony was improper rebuttal in that she was an unendorsed State's witness who did not rebut any evidence presented by the defense.

"The determination of the scope of rebuttal is within the trial court's discretion and, absent an abuse of such discretion, the trial court's decision will not be reversed." *State v. Simmons*, 944 S.W.2d

165, 177 (Mo.1997). An abuse of discretion exists where a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable that it shocks the court's sense of justice and indicates a lack of careful consideration. *State v. Smith,* 996 S.W.2d 518, 521 (Mo.App. W.D.1999). Mere error is insufficient to support a reversal; this court will affirm the trial court's judgment unless the appellant shows that the error was so prejudicial as to deprive him of a fair trial. *State v. Hamilton,* 892 S.W.2d 371, 380 (Mo.App. E.D.1995). The test for prejudice where a criminal appellant claims improper admission of evidence "is whether the improper admission was outcome-determinative." *State v. Black,* 50 S.W.3d 778, 786 (Mo. banc 2001).

Rebuttal evidence is proper where it directly or indirectly explains, counteracts, repels, or disproves a defendant's evidence. Hamilton, 892 S.W.2d at 379. If the defense raises an issue either directly or by implication, the state may present otherwise inadmissible testimony to counteract the negative inference the defense has injected into the case. *Id.* Evidence may be presented on rebuttal even if the testimony is cumulative of the State's evidence or it would have been better procedure to offer the evidence on direct. *State v. Arnold,* 859 S.W.2d 280, 282 (Mo.App.1993). The fact that evidence would have been competent in chief had the witness's name been endorsed on the information "does not destroy its admissibility on rebuttal." *State v. Villinger,* 237 S.W.2d 132, 136 (Mo.App.1951).

Here, the defense's sole witness was Officer Atwood, who testified to finding the Blazer and lifting a fingerprint from the rear view mirror. The defense rested and the State called Kerensa Conaway in rebuttal. When Martin objected to Conaway's testimony as outside the scope of rebuttal evidence, the State replied that the purpose of Conaway's testimony was to link Martin to the car and negate the inference raised by Martin. The State argued that the negative inference drawn from Atwood taking an unidentified print from the Blazer's rear view mirror was that Martin could not be linked to the car as Atwood "did not find the defendant's print." Martin conceded that this was a reasonable inference but "that was not [his] evidence."

This court need not just determine whether Conaway's testimony was within the scope of the defense's evidence. In order for this court to reverse the trial court, an appellant must demonstrate that he was prejudiced by the admission of rebuttal testimony and that prejudice deprived him of a fair trial. *Black,* 50 S.W.3d at 786.

In *State v. Simmons,* the State presented rebuttal evidence from a police detective who testified that the defendant had not said he was sorry in order to negate the inference of remorse raised by the defendant crying during his confession. 944 S.W.2d 165, 177 (Mo. banc 1997). On appeal, the defendant claimed the detective's testimony was admitted in error. *Id.* at 176. The Supreme Court of Missouri stated: "While it is not clear that the defense raised the issue of remorse by injecting evidence of the defendant's lacrimation, we cannot say that the admission of [the detective's] testimony on rebuttal—absent any showing of prejudice and in light of the overwhelming evidence supporting the conviction rose to the level of an abuse of discretion that requires reversal." *Id.* at 177.

Here, although Martin vigorously argues the trial court's error in admitting Conaway's testimony on rebuttal, his argument is devoid of any demonstration that Conaway's testimony was so prejudicial as to

deprive him of a fair trial. Martin argues that "Conaway provided the State with its only direct evidence of Appellant's guilt." Martin seems to disregard his confession; the jury had a copy of the statement he gave to the police in which he admitted taking the Blazer. Given the confession, a reasonable juror could have completely disregarded Conaway's testimony and still found Martin guilty of stealing.

■■■ In the balance of his argument, Martin makes several allegations of discovery violations that are not raised in his point relied on. This court will "only consider arguments raised in the points relied on and [will] not consider arguments raised in the argument portion of the brief which are not encompassed by the points relied on." *State v. Daggett,* 170 S.W.3d 35, 42 (Mo.App.2005). Accordingly, this court will not review Martin's allegations of discovery violations.

Martin fails to demonstrate any outcome-determinative prejudice arising from the trial court's admission of Conaway's rebuttal evidence. Therefore, this court does not find any abuse of discretion by the trial court in admitting the testimony. Martin's final point on appeal is denied.

The judgment of the trial court is affirmed.

All concur.